STATE of Missouri, Respondent,

v.

Gary McGOWAN, Appellant.

No. WD 41002.

Missouri Court of Appeals,
Western District.

June 6, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1989.

Application to Transfer Denied
Sept. 12, 1989.

Sean D. O'Brien, Public Defender, Leon Munday, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and NUGENT and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Gary McGowan was charged by information with robbery in the first degree, § 569.020, RSMo.1986, and armed criminal action, § 571.015, RSMo.1986. The case went to trial on December 7, 1987, but jury deadlock resulted in a mistrial. On March 4, 1988, the state was granted leave to file a second amended petition which charged McGowan as a prior offender. On May 4, 1988, a jury returned a verdict of guilty of robbery in the first degree and armed criminal action.

After the jury returned its verdict, the judge heard evidence that McGowan was a prior offender. The court found him to be a prior offender and sentenced him to 10 years for robbery and 3 years for armed criminal action. Both are minimum terms under law. McGowan does not dispute the sufficiency of the evidence to sustain his convictions.

■ The first point on appeal is that the trial court erred in overruling defendant's objection to the prosecutors' statements on multiple occasions in the closing argument that the victim had identified defendant in another proceeding because no evidence of such an identification was presented. The defense claims that the improper statements clearly prejudiced him.

Mr. Corona, the victim, testified at trial. He was a maintenance and clean-up man at the Los Corrals Restaurant, in Kansas City. He testified that on Monday, August 31, 1987, at around 5:30 he heard a knock on the door of the restaurant. The restaurant was closed that day. Corona identified Gary McGowan as the person who knocked on the door. McGowan asked for some matches. Corona went to get some. When he returned with the matches, Gary McGowan asked for another book of matches. Then McGowan pulled out a gun. After taking Corona's pocketbook, McGowan hit him several times on the head. Then McGowan kicked Corona in the mouth. McGowan then left the restaurant.

Corona made his way to a hospital with the assistance of an exterminator who was working in the downstairs of the restaurant. At the hospital, Corona informed a police officer that Darry McGowan (Gary McGowan's non-identical twin brother) was the person who robbed him. Only after Corona was shown a photo display did he realize that it was actually the defendant Gary McGowan who robbed him. Later, Corona was shown another photo display. He again picked Gary's picture. No evidence was adduced at trial that Corona identified Gary at an earlier court proceeding. The other court proceeding, however, was referred to when Corona was cross-examined.

"The trial court has broad discretion in the controlling of closing argument, with wide latitude accorded counsel in their summations, and a conviction will be reversed for improper argument only if it is established the complained of comments had a decisive effect on the jury's determination." *State v. Moffitt*, 754 S.W.2d 584, at 590 (Mo.App.1988). "In determining whether an improper argument was so clearly injurious that a new trial should be required, this court considers whether the trial court gave a cautionary instruction, whether the trial court gave a curative type instruction to disregard the improper comment and the strength of the State's case." *State v. Cannady*, 660 S.W.2d 33, at 40 (Mo.App.1983).

The closing remarks in question were made by Assistant Prosecutors Bortnick and Sakoulas. The remarks here at issue, as well as proceedings before the bench are quoted:

Mr. Corona, as I have said three different times, three different line-ups—excuse me, photo spreads, September 1st, the next day, eight people. He sees eight people. He did it. He sees one a

month later. Again, he did it. He testifies on two separate occasions, and both separate occasions—

MS. SCHENKENBERG [Assistant Public Defender]: Your Honor, I am going to object to that. I don't believe there is any other testimony at all.

(COUNSEL APPROACHED THE BENCH AND THE FOLLOWING PROCEEDINGS WERE HAD:)

MR. BORTNICK: Your Honor, she alluded to the fact that Mr. Corona had testified before with a judge and a jury, and he certainly testified at the preliminary hearing.

MS. SCHENKENBERG: But that's not in evidence. You can't argue what's not in evidence.

THE COURT: There is at least that prior—

MS. SCHENKENBERG: Just that one statement but nothing else was said.

THE COURT: So that technically it's—if he has testified, he has only testified one time before, as far as the evidence is concerned.

MR. BORTNICK: Okay, I'll correct that, Your Honor.

MS. SCHENKENBERG: I am going to ask that the jury be instructed to disregard that last remark.

THE COURT: He is going to correct it and I think that's sufficient.

MS. SCHENKENBERG: I am still objecting to that argument.

THE COURT: I understand. I am going to overrule it in light of what he said he was going to do.

(THE PROCEEDINGS RETURNED TO OPEN COURT.)

MR. BORTNICK: He testified on one other occasion, kept the same story. So you at least have three line-ups and one other time that he has testified, sworn under oath, that Gary McGowan, not Darry Davis or Darry McGowan.

During the state's second-half closing argument, Assistant Prosecuting Attorney Steve Sakoulas made the following remarks:

Yes, this defendant is presumed innocent when he is picked out of the photographs of four individuals and he is positively identified as being the person that robbed him. He is still presumed innocent. And he is presumed innocent when Mr. Corona positively identifies this defendant as being the person that robbed him at the other hearing, and he is presumed innocent—

MS. SCHENKENBERG: Your Honor, I am going to object to that. There is absolutely no testimony about him—I am going to ask for a mistrial at this point.

THE COURT: Make your objection.

(COUNSEL APPROACHED THE BENCH AND THE FOLLOWING PROCEEDINGS WERE HAD:)

MS. SCHENKENBERG: There is no testimony that he has ever identified him at any other hearing.

THE COURT: I don't remember that testimony.

MS. SCHENKENBERG: And I am going to ask—I am going to object. I am going to ask, first of all, that the jury be admonished, and I am going to ask for a mistrial. This is the third time they have said that and I think it's completely tainted this jury.

THE COURT: I don't remember it but I don't remember it sure enough, with the certainty that I can say that he made an identification in the other trial.

MR. SAKOULAS: We'll ask that the jury be instructed to the evidence.

THE COURT: I am going to overrule the objection.

(THE PROCEEDINGS RETURNED TO OPEN COURT.)

Corona picked McGowan's picture out on two different occasions. Moreover, he made an in-court identification. Evidence was adduced at trial of the original mistaken identification of Darry and of the fact that there was a prior hearing concerning the same case. Therefore, whatever prejudice may have been caused by the prosecutor's remarks does not require reversal. This point is denied.

McGowan's second and third points stem from the belated charge and proof of his being a prior offender. Section 558.021,

RSMo.1986 outlines the procedure by which a court determines that the defendant has a prior felony conviction. That statute provides that in a jury trial the facts supporting a finding of a prior conviction "shall be pleaded, established and found prior to submission to the jury...." The jury loses its sentencing function to the judge when a defendant is found to be a prior offender.

McGowan was first charged by information of first degree robbery and armed criminal action. After declaration of a mistrial following a hung jury, the prosecutor made two attempts to file an amended information charging him as a prior offender. Leave was finally granted to add the prior offender charge about two months before the trial. After the guilty verdict was brought in, the state introduced a certified copy of McGowan's 1986 judgment of conviction for attempted robbery.

■ McGowan claims on appeal that the amended information charging him as a prior offender constituted prosecutorial vindictiveness. The introduction and finding of the prior conviction were untimely since the extended term procedure statute, § 558.021.2, requiring such a finding before submission, was not followed. ·

As to the issue of prosecutorial vindictiveness, it cannot be said to have been shown merely by the filing of the prior offender charge after the mistrial. Contrary to McGowan's argument, the "ante was not upped" here as denounced in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The only effect the prior offender statute had here was to allow the court to assess punishment rather than to involve the jury, § 557.036.4(2). McGowan received ten years for the robbery and three for armed criminal action, both were minimum sentences which the jury could have recommended. As pointed out in *State v. Bowling*, 734 S.W.2d 565, 567 (Mo.App.1987), the prosecutor is vindictive when he forces the accused to forego a constitutional right. In Missouri, sentencing by a jury is not guaranteed by the constitution. *State v. Foster*, 684 S.W.2d 597, 598 (Mo.App.1985). As in *Bowling, supra* there is not a suffi-

cient record to make this point. It should also be noted, *Bowling*, reversed a conviction, but specifically allowed the state on retrial to prove that the defendant was a prior offender. *Id.* at 567.

■ As to McGowan's complaint about the introduction of evidence concerning his prior offender status after the time allowed by statute, it is clear that state law requires a finding of prior offender status prior to the case going to the jury. There is no doubt that McGowan is a prior offender. There is also no question that he suffered no prejudice in this case because the trial court gave him the absolute minimum sentence possible.

While the state's motives may not have been pure in defying the timing requirement of § 558.021.2, the foremost concern is how that error prejudiced the defendant. *State v. Wynn*, 666 S.W.2d 862, 864 (Mo. App.1984). McGowan complains that it is difficult, if not impossible, to establish prejudice when the state fails to comply with the timing requirements of § 558.021. In support of that position, McGowan cites *State v. Street*, 735 S.W.2d 371 (Mo.App. 1987). In that case, this court decried indulging the laxity in complying with the legislative direction in sentencing in the "extended term" area. *Id.* at 373. Yet, this case cannot be remanded because no prejudice was shown. *State v. Wynn, supra*, at 864–65. Because *no* violation of substantive rights was shown, the tardy adjudication of his prior offender status does not warrant a new trial. *Tate v. State*, 752 S.W.2d 393, 394 (Mo.App.1988).

Prosecutors are put on notice that appellate courts are dissatisfied with the practice raised in this point. Although each case is decided on unique facts, this opinion should serve as a warning that future violations of the timing provision of § 558.021.2 will be dealt with harshly. *But see State v. Kilgore*, 771 S.W.2d 57, 64 (Mo. banc 1989).

■ McGowan's final point alleges an abuse of discretion in the denial of his motion for a new trial. He claims that the state failed to disclose a transcript of a

defense witness's testimony. The motion was denied because McGowan failed to show that he was prejudiced by the failure to supply the transcript.

Prior to the first trial, pursuant to Rule 25.03, McGowan filed a request for discovery which asked for "[a]ny existing transcript of the preliminary hearing and of any prior trial held in the defendant's case if the state has such in its possession or if such is available to the state." After that trial, defense counsel learned that the prosecutor had in his possession a transcript of the prior trial testimony of Annie Davis, the defendant's mother. That document should have been given to the defense, but it was not.

The trial court was justifiably upset when this point was raised.

> I know, but the rules kind of put a heavier burden on the State, and they're there and they have to be complied with, and I believe they should be enforced, and it depends on the circumstances of each case, notwithstanding the issue of prejudice at this point in time as to whether or not—it seems, because of repeated problems of this sort, not with you particularly, not with Mr. Bortnick particularly, but with a number of people in the prosecutor's office, that sometimes the only way you get their attention is to say okay, we'll try it all over again. Then you get their attention, then you get something done, unfortunately, And that's the problem that I think we have. That's what it says.

About a month later, when the court ruled on the motion it said:

> It's always a troublesome thing to deal with these problems because I feel that when the other lawyer calls and says to you how about the transcripts, and offers transcripts, it's hard for me to think you just flat forgot that you had Miss Davis' testimony and transcript. I am satisfied that notwithstanding that, that it's—it's difficult for me to see that there's any prejudice that has resulted to the defendant in this matter and I think that in this case, I believe it to be the bottom line consideration, as they say

... I am not able to find anything that would in any way cause any bias and prejudice.

"Whether a sanction should be imposed for failure to comply with an appropriate discovery request or order is a matter which lies within the sound discretion of the trial court." *State v. Johnson*, 702 S.W.2d 65, at 73 (Mo. banc. 1985). Because no sanctions were imposed the "task is to determine whether the State's discovery violation resulted in fundamental unfairness or substantively alter the outcome of the case." *Id.* If this court reaches an affirmative answer to either of the above queries then the trial court's actions is an abuse of discretion. *Id.*

This court has read over the testimony of Davis in the second trial of her son. She was the sole witness for the defense and claimed that she spent the whole day of August 31, 1988 with Gary. The only time any reference was made to her prior testimony was during questioning concerning her awareness that Corona believed Gary had committed the robbery. At first she claimed not to know when she first found out Corona thought it was Gary. Then the prosecutor stated, "isn't it true that you testified before that he [Corona] told you on Thursday that he thought Gary ... [had hit him]." The Thursday they were speaking of was three days after Corona was robbed. By that Thursday, Davis had not yet informed the police that she was her son's alibi.

It is hard to glean from the transcript what prejudice, if any, this verbal exchange caused. All the information was bound to come out. Additionally, defense counsel knew of and was witness to the prior testimony of Davis. It is hard to determine what effect the cross-examination had on Davis's credibility. In any event, given the standard of review, this point does not require reversal.

The judgment is affirmed.